**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CORTEZ MICHALSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 24 C 4038** |
| | ) | |
| **ERSAN EROL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## **MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Cortez Michalski filed a lawsuit under 42 U.S.C. § 1983 alleging that he received inadequate medical care after he suffered a spider bite near his left eye while he was detained at the Will County Adult Detention Facility (the Jail). He named as a defendant Ersan Erol, a physician assistant (PA) at the Jail. Erol has moved for summary judgment, contending that Michalski failed to fully exhaust the Jail's grievance process before filing suit, as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Specifically, Erol argue that Michalski failed to appeal the initial determination on any of the three grievances he filed.

The Court thanks appointed counsel, Mark Bishop and Ryan Prickel of the Law Offices of Mark Bishop, for their diligent service on behalf of Mr. Michalski.

### **Facts**

Michalski suffered the spider bite while sleeping on February 24, 2024. He immediately requested medical treatment. In his first grievance, which he submitted on

February 27, 2024, Michalski said that he had been bitten by a spider a few days earlier, and "my left eye is severely red and swollen. I have told multiple nurses, they said I would be scheduled for the nurse but nothing has happen[ed]." Def.'s Ex. A at 1. On February 28, a Jail representative responded, stating, "You were seen by the nurse on 2/28/24 and seen by the provider the same day. Antibiotics prescribed." *Id.*

In his second grievance, submitted about two weeks later on March 14, Michalski said, "The doctor notes are incorrect and does not reflect what I told him. On 2/28/24 [I] explained to the doctors that my vision was getting worst [sic] and that my eye is in pain when I move it. I still have not seen the eye doctor or received real help for my eye pain and deteriorating of my vision in my left eye." *Id.* at 2. The Jail's response, issued on March 25, stated: "You have been seen in nurse sick call 3/24/25 and by the provider on 3/25/24. Hot compresses 2 times per day, acetaminophen, and eye drops have been prescribed." *Id.*

In his third grievance. submitted about two months later on May 21, Michalski said, "I have noticeably lost vision in my left eye since my spider bite, it is not getting any better I need my eyedrops and an eye exam. So I can receive eye glasses to c[o]mpensate for the lack of vision in my left eye. My eye is also very painful and sensitive to light." *Id.* at 3. The Jail stated in reply: "Please file a sick call to be seen by the provider again. You have not filed a sick call request for your eye since you were seen by the provider on 3/25/24 for your eye. It was improving at that time. It sounds like a re-assessment could be beneficial from what you are describing." *Id.* Michalski filed this lawsuit on May 16, 2024.

In short, Michalski filed grievances regarding: not seeing a nurse (grievance 1)

or an eye doctor (grievance 2); not getting "real help" for his eye injury even though his condition was deteriorating (grievance 2); and, more generally, not getting appropriate treatment (grievances 2 and 3).

In this lawsuit, Michalski alleges that when he saw PA Erol on February 28, 2024, Erol did not provide adequate or appropriate medical care. *See* Am. Compl. at 4. He alleges that after further complaints including the first and second grievances, he was seen by Erol again on March 25. He says that on that date, Erol prescribed eye drops and pain medication but that these did him no good either. *See id.* at 5. In other words, Michalski's complaint in this lawsuit involves the appropriateness and adequacy of the care that Erol provided.

As indicated earlier, Erol argues in moving for summary judgment that Michalski's failure to appeal following the responses to his grievances amounted to a failure to exhaust the Jail's grievance process. The printed grievance responses provided by Erol as exhibits to his motion do not refer to the need for or the possibility of an appeal. But the grievance procedure in the Jail's inmate handbook does. It says the following:

> **Grievance Decision Appeal**
> The Inmate Grievance Procedure shall include one level of appeal.
> - Your appeal is to be submitted on an                    within forty-eight (48) hours of receiving the Grievance Response.
> - You must explain the reason(s) for requesting an appeal of the grievance decision.
> - Your grievance decision appeal will be forwarded to the deputy chief or designee for review and consideration.
>
> You will receive a written reply within fifteen (15) business days unless circumstances require an extension. Once the deputy chief or designee replies to your appeal, the issue will be administratively closed. If not resolved at the local level, inmates may submit a complaint to the Jail and Detention Standards Unit. A copy of the local decision must be attached to the complaint.

Def.'s Ex. C at 33. (The Court notes that the blank in the first bullet point also appears

in the inmate handbook and is not filled in there either, at least not in the copy that Erol's counsel provided.)

In addition, in responding to Erol's motion for summary judgment, Michalski admitted the following factual contentions by Erol (among others):

- All the grievances filed and responses received by Michalski were available at kiosks within the Jail.
- The kiosks were available to the inmates daily so long as the Jail was not on lockdown.
- Michalski does not contend that any medical provider or employee of the Jail interfered with his ability to file grievances or appeal grievances.
- All inmates are provided a copy of the inmate handbook upon arrival at the Jail, and they are also able to access the handbook at the kiosks.
- The handbook describes the grievance appeal process (as set out above).
- The grievance and appeal process are completed via the kiosks.
- A grievance response is appealable as soon as an inmate receives it.
- "When reviewing the response, all an inmate is required to do is 'checkmark' an appeal prompt and write a brief explanation."
- Michalski did not appeal from the responses to any of his grievances.

*See* Pl.'s Resp. to Def.'s Stat. of Facts ¶¶ 12, 20, 26-29, 31-35, 39-41.

As just indicated, Michalski concedes that he did not appeal after receiving the responses to his grievances. He argues, however, that this does not amount to a failure to exhaust. Michalski contends that the inmate handbook "failed to inform inmates that they are permitted to file grievances regarding complaints about the facility's health care

system" and that based on the handbook, "there is no indication that the inmate is permitted to appeal grievances regarding complaints about the facility's healthcare system." Pl.'s Resp. to Def.'s Mot. for Summ. J. at 7-8. He contends that a reasonable inmate would conclude that such appeals are not available.

Second, and more generally, Michalski argues that "[t]he Inmate Handbook did not advise inmates to exhaust all administrative procedures" and that none of the grievance responses indicated that he could appeal. *Id.* at 11.

Third, Michalski argues that "since the grievance responses failed to indicate a disposition, [he] did not believe that his grievances were 'denied' or otherwise resulted in a negative disposition," and thus there was nothing for him to appeal. *Id.* at 8.

Finally, he contends that the grievance process "operated as a dead end" because the Jail did not ensure that a person with adequate knowledge and training handled grievances. *Id.* As a result, Michalski says, he was never advised that a medical doctor, an optometrist, and an ophthalmologist provided medical care on site and thus were available to him as an inmate.

**Discussion**

The PLRA requires an imprisoned person who files a lawsuit under 42 U.S.C. § 1983 to first exhaust available administrative remedies within the correctional system. 42 U.S.C. § 1997e(a); *see*, *e.g.*, *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005); *Perez v. Wisconsin Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999). Specifically, the statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available

are exhausted." 42 U.S.C. § 1997e(a).

The administrative process, which typically involves filing and pursuing a grievance, is intended to allow correctional facilities "to address [issues] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). The statute "requires proper exhaustion." *Perttu v. Richards*, 605 U.S. 460, 465 (2025). This means that an inmate must follow the facility's grievance process to its conclusion. *Jones*, 549 U.S. at 218.

Because failure to exhaust is an affirmative defense, the burden is on the defendant to establish that the plaintiff failed to exhaust. *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011). And because Erol has moved for summary judgment, he must show that there are no genuine disputes regarding facts material to the exhaustion issue and that he is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

First, the Court overrules Michalski's contention that the Jail's grievance policy is deficient, in a way that excuses full exhaustion, because it does not specifically reference health care-related complaints as a proper topic for grievances or appeals. That wouldn't help Michalski anyway, as *he* clearly understood the policy as allowing health care-related complaints—seeing as how he filed three grievances that alleged exactly that. But that aside, the handbook refers to "denial of programs *and services*," Defs.' Ex. C at 32 (emphasis added), as an appropriate subject for grievances. This is sufficient to inform inmates that they may file grievances on health care-related issues. And nothing in the handbook's discussion of appeals suggests that grievances of any particular type (here, regarding health care) cannot be appealed.

Second, as indicated, Erol contends that Michalski did not appeal any of the responses to his grievances and thus did not exhaust the Jail's grievance process. Michalski is correct that the Jail's grievance policy does not specifically tell inmates that they have to appeal. But he cites no authority for the proposition that this is required in order for a failure-to-exhaust argument to succeed. The exhaustion requirement exists because Congress imposed it by statute, not because of what a particular institution's grievance policy says. To draw an analogy, a person petitioning for habeas corpus under 28 U.S.C. § 2254 typically is not specifically old at each stage of his state court proceedings that he has to appeal in order to exhaust state remedies as required by habeas corpus law, but exhaustion is nonetheless required.

More to the point, although the inmate handbook did not expressly mandate an appeal, it unquestionably established a right to appeal. And Michalski does not dispute that the appeal option was displayed on the kiosk when an inmate viewed the Jail's response to his grievance. Even if the handbook did not expressly say that an appeal was mandatory, the Supreme Court has stated that "[w]hen an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Ross*, 578 U.S. at 644. That is the case here. *See also, e.g., Hope v. Velasco*, No. 01 C 1574, 2004 WL 417198, at *2 (N.D. Ill. Feb. 23, 2004) (inmate handbook language suggesting that an appeal was optional-—— "if a detainee wishes to appeal"—did not relieve plaintiff from exhausting the grievance appeal process).

Third, Michalski argues that the responses to his grievances did not indicate that his requests had been overruled, and thus neither he nor any reasonable inmate in his

position would have understood that there was something to appeal. It is true that the grievance responses did not use the term "overruled" or anything similar. But as the Court will discuss, it was clear from the responses to Michalski's second and third grievances that he was not being offered any remedy or relief for his allegedly inadequate medical treatment.

Michalski's first grievance complained that he had not been able to see a nurse. The response, sent the following day, said that he had *that day* seen a nurse. In other words, the response effectively said Michalski's complaint had been resolved. The Court agrees that a reasonable inmate in Michalski's position would not have understood that he needed to appeal this particular grievance: the response was that his grievance had, in effect, borne fruit. But Michalski is not suing based on the fact that he did not see a nurse; he is suing because he contends he was given ineffective medical treatment. The first grievance thus did not exhaust the claim that Michalski asserts in this lawsuit; to satisfy the exhaustion requirement, a grievance has to involve the same conduct that is at issue in the lawsuit. *See Bowers v. Dart*, 1 F.4th 513, 518 (7th Cir. 2021) (grievance regarding failure to protect inmate during an attack did not exhaust claim of failure to protect him prior to the attack).

Michalski's second grievance is the first one where he said the treatment he had been given was not effective. In this grievance, submitted on March 24, 2024, Michalski reported, in substance, that the treatment he had been given was not working and that his vision was deteriorating and he was still in pain. The Jail's response did not address this point other than to state that he had been seen by a nurse and another medical provider and that treatment had been prescribed. Michalski testified during his

deposition that he did not believe his grievances had been denied. But an ordinary and reasonable inmate in Michalski's position looking at the Jail's response to this grievance would have understood that the Jail was giving him the brush-off: even though he had complained about ineffective treatment, the response did not offer any further treatment or any other remedy. An ordinary and reasonable inmate would have understood that the grievance had not been resolved favorably and that if he wanted more or different treatment—which is what Michalski alleges in this lawsuit—he would have to appeal.

The third grievance, which Michalski submitted about two months later in May 2024, also concerned the ineffectiveness of the treatment he had been given. The response, again, gave him the brush-off: Michalski's grievance said that he had not seen an eye doctor and that the treatment offered to him had not worked; the Jail's response said that he had been seen again since submitting the grievance, but still not by an eye doctor. In short, the Jail's response did not offer Michalski any relief. Again, an ordinary and reasonable inmate in this situation would have understood that the grievance had not been resolved in his favor and that getting relief would require an appeal or other further action.

In short, It was readily apparent from the responses to the second and third grievances—the ones in which Michalski alleged inadequate treatment—that Michalski was not being given what he asked for in the grievance. That's effectively a denial. And "even if an ordinary inmate would have been unsure about the meaning of this resolution of his grievance, he should have erred on the side of exhaustion and filed an appeal." *Clark v. Syed*, No. 22-CV-327-JDP, 2023 WL 4930094, at *2 (W.D. Wis. Aug. 2, 2023) (cleaned up) (citing *Ross*, 578 U.S. at 644, and *Perez*, 182 F.3d at 536).

For these reasons, no reasonable fact finder could conclude that Michalski did not have to take further action to exhaust the grievance process.

Finally, Michalski argues that the grievance process amounted to a dead end because the person addressing the grievances did not have sufficient knowledge or training. But the record supports only the proposition that Michalski's second and third grievances were effectively denied. Denial of a particular grievance or grievances does not amount to evidence that the system is inadequate; if it did, the exhaustion requirement, practically speaking, would be erased.

## Conclusion

For the reasons stated above, the Court grants defendant's motion for summary judgment [dkt. 69]. The Court directs the Clerk to enter judgment stating: This case is dismissed without prejudice for failure to exhaust administrative remedies. The status hearing set for this morning is vacated.

Date: November 16, 2026

MATTHEW F. KENNELLY
United States District Judge